IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Kathleen A. Lamb, :
        Plaintiff : Civil Action 2:08-cv-00173

v. : Judge Holschuh

Michael J. Astrue, : Magistrate Judge Abel
Commissioner of Social Security,
        Defendant :

## REPORT AND RECOMMENDATION

Plaintiff Kathleen A. Lamb brings this action under 42 U.S.C. §§405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security denying her application for Social Security Disability Insurance and Supplemental Security Income benefits. This matter is before the Magistrate Judge for a report and recommendation on the parties' cross-motions for summary judgment.

**Summary of Issues.**

Kathleen Lamb maintains that she became disabled at age 50 by depression and a post-traumatic stress disorder. The administrative law judge found that Lamb retained the ability to perform her past work. Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because the administrative law judge improperly disregarded the opinion of Lamb's treating psychiatrist, Dr. Koontz.

**Procedural History.** Plaintiff Lamb filed her application for disability insurance benefits on August 12, 2004, alleging that she became disabled on June 20, 2004, at age 50, by anxiety and depression. (R. 55, 86.) The application was denied initially and

upon reconsideration. Plaintiff sought a *de novo* hearing before an administrative law judge. On July 17, 2007, an administrative law judge held a hearing at which plaintiff, represented by counsel, appeared and testified. (R. 206.) A vocational expert also testified. On October 22, 2007, the administrative law judge issued a decision finding that Lamb was not disabled within the meaning of the Act. (R. 23.) On January 14, 2008, the Appeals Council denied plaintiff's request for review and adopted the administrative law judge's decision as the final decision of the Commissioner of Social Security. (R. 3-5.)

**Age, Education, and Work Experience**. Lamb was born June 18, 1954 (R. 55.) She has a high school education. (R. 213.) She has worked as a medical technician, pharmacy technician, clerk, cook, deli clerk, thrift store runner, and store clerk. She last worked in 2004. (R. 63.)

**Plaintiff's Testimony.** The administrative law judge fairly summarized Lamb's testimony as follows:

> The claimant is divorced and lives with her son, his fiancé and his two children, ages five months and two years old. She drives twice a week to go grocery shopping. She does household chores, for example making the bed, cooking, washing dishes, mopping and vacuuming. She takes walks with her fiance (e.g., to go for ice cream). She reads, but has had difficulty with focus. She watches television and gets movies from the library. She visits with her family and friends. She plays solitaire on the computer. Two years ago, she used to read, fish, go boating and camping.
>
> She described the inability to take criticism - she "goes to pieces," and anxiety since 2004, although she stated that her

> medications do help. She described having suicidal thoughts, but stated she would *not* act on these thoughts as she "loves people." She has had treatment at MoundBuilders Guidance Center for two to three years. She stated that her only other mental health treatment was two to three times total for depression at least 20 years earlier.
>
> It should be noted that the claimant reported last working at the Movie Gallery. She quit because of problems with her pay and not because of her impairments. The claimant had only seen her counselor, Ms. Bickmeyer on two occasions in 2005.

(R. 20.)

**Medical Evidence of Record.** The administrative law judge's decision fairly sets out the relevant medical evidence of record. This Report and Recommendation will only briefly summarize that evidence.

<u>Alan White, Ph.D</u>. On October 28, 2004, Dr. White, a psychologist, evaluated Lamb at the request of the Bureau of Disability Determination. (R. 118-23.) Lamb reported that she had never been hospitalized for psychiatric reasons. In the past, she received counseling from Moundbuilders and had taken Xanax for the past twelve years. At the time of Dr. White's evaluation, Lamb was not taking any medication or attending counseling.

She felt tired and fatigued most of the time and had difficulty sleeping at night. Her appetite and eating habits had changed a lot recently. She felt worthless and guilty most of the time. She had lost interest in most of the things she used to enjoy. She spent

3

most of her time at home alone and tried not to socialize with others. She felt short-tempered and irritable. She had crying spells and experienced suicidal ideation.

Lamb reported that she last worked in June 2004. She had worked as a clerk at Dollar General for two days. Her longest employment had been as a pharmacy technician for nine years. She stated she could not work at the present time because of stress.

Lamb reported that could feed, bathe, and dress herself. She spent a typical day cleaning the apartment, sleeping, or sitting around. She lacked energy. Her appetite was described as okay.
She occasionally socialized with her family but hardly ever with her friends. She had difficulty falling asleep and waking up during the night. Worrying kept her up at night.

On mental status examination, Lamb displayed a downcast and tearful affect. Her eyes were swollen, and she appeared sad. She was restless and fidgety throughout the examination. She reported feeling tense and uptight and experiencing forgetfulness, indecisiveness, and frustration. She was easily startled.

Lamb reported being raped, and she continued to have flashbacks and nightmares regarding the incident. She denied having hallucinations, delusions, or paranoid ideation.

Lamb was oriented in all four spheres. She did not exhibit any confusion or lack of awareness with regard to memory for past or recent events in her life. She was able to perform serial task sevens without difficulty. She was presented with four similarity

items and was able to respond correctly to three of them. She was presented with four proverbs and was able to understand three of them.

Dr. White diagnosed post traumatic stress disorder and major depressive disorder, recurrent, moderate. Dr. White assigned a Global Assessment of Functioning ("GAF") score of 50. Dr. White concluded that Lamb's ability to remember and concentrate was not impaired, nor was her ability to follow simple directions. Her ability to get along with others such as supervisors and co-workers was mildly impaired due to symptoms of post-traumatic stress disorder and depression. Her ability to withstand stress from a stressful environment was moderately impaired.

<u>Karen Terry, Ph.D.</u> On December 16, 2004, Dr. Terry, a psychologist, completed a psychiatric review technique. (R. 124-41.) Alice L. Chambly, Psy.D, reviewed the evidence of record and affirmed Dr. Terry's conclusion. (R. 124.) Dr. Terry noted that Lamb experienced recurrent and intrusive recollections of a traumatic experience, which were the source of marked distress. (R. 129.) Dr. Terry noted that Lamb had mild restriction of daily activities, moderate difficulties in maintaining concentration, persistence, or pace and no episodes of decompensation. (R. 134.)

With respect to understanding and memory, Lamb was moderately limited in her ability to understand and remember detailed instructions. With respect to sustained concentration and persistence, she was moderately limited in her ability to carry out detailed instructions and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace

5

without an unreasonable number and length of rest periods. In social interaction, she was moderately limited in her abilities to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (R. 138-39.)

<u>Moundbuilders Guidance Center</u>. On January 13, 2005, Ms. Bickmeyer, a social worker with Moundbuilders Guidance Center, completed a diagnostic assessment and individual service plan recommending that Lamb receive individual therapy, undergo a medical evaluation, and attend the anxiety and depression clinic. (R. 190-91.)

On March 25, 2005, Warren Koontz, M.D., a psychiatrist, evaluated plaintiff. (R. 187.) On mental status examination, she had anhedonia, depression, flattened affect, and low self-esteem. She reported poor sleep. She felt useless. She denied suicidal or homicidal ideation. Her thought processes and speech were normal. She had good insight. She was tearful during the interview. Dr. Koontz diagnosed major depression, moderate; dysthymia; and general anxiety disorder. He assigned a GAF score of 62. (R. 187.)

On March 29, 2005, Ms. Bickmeyer completed a daily activities questionnaire for the Bureau of Disability Determination. (R. 143-46.) Ms. Bickmeyer noted that Lamb was anxious, depressed, and had low self-esteem. Her thoughts jump from one subject to the next. She stays to herself. Lamp indicated that she was capable of simple, routine tasks, but she was stressed around people.

Ms. Bickmeyer stated that she was "still getting to know" Lamb. Ms. Bickmeyer was providing counseling to reduce anxiety and address issues underlying depression. Lamb was being referred to the depression/anxiety clinic for medication management by a psychiatrist. (R. 146.)

On April 22, 2005, Dr. Koontz noted that Lamb's progress was only fair. Dr. Koontz adjusted her medications. (R. 185.) On May 13, 2005, Dr. Koontz indicated that Lamb's progress was not so good. She had difficulty obtaining and adjusting to her medications. She was depressed and tearful. (R. 184.) On May 27, 2005, Dr. Koontz noted that Lamb's progress was somewhat better. *Id.*

On October 10, 2005, Dr. Koontz indicated that Lamb had not been seen since May. She had not been taking the Remeron, so she was more depressed. (R. 182.) On December 27, 2005, Dr. Koontz noted that Lamb had made good progress, and that she was much more stable than before. On February 21, 2006, Lamb's medication was working fine. On April 11, 2006, she remained stable, and her progress was described as good. (R. 177.)

On May 26, 2006, Lamb was upset and tearful. Her brother, with whom she had been living, kicked her out. (R. 176.) On June 23, 2006, Lamb's progress was stable and good. (R. 175.) On August 22, 2006, Lamb was described as good. (R. 173.)

On October 10, 2006, Lamb was not doing so well. Her father told her that he never loved her. She was also upset by her dysfunctional boyfriend. Dr. Koontz

increased her medications. On November 7, 2006, Lamb was doing much better. (R. 171.)

On January 6, 2007, Lamb's progress was excellent, and she reported that her medications were working perfectly. She was not depressed; she was happy. (R. 195.) Throughout the course of treatment, Dr. Koontz indicated that Lamb's GAF was 62. (R. 173, 175, 176, 177, 178, 180, 182, 184, 185, 187 and 195.)

Dr. Koontz completed two forms regarding Lamb for Disability Medical Assistance dated May 13, 2005 and April 24, 2007. (R. 250-58.)[1] With respect to understanding and memory, Dr. Koontz found moderate limitations in her abilities to remember locations and work-like procedures and to understand and remember detailed instructions. With respect to sustained concentration and persistence, Lamb was moderately limited in her ability to carry out detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to work in coordination with or in proximity to others without being distracted by them; and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. She was markedly limited in her ability to sustain an ordinary routine without special supervision. With respect to social interaction, Dr. Koontz opined that plaintiff was moderately limited in her ability to

---

[1]It is difficult to discern which pages go with which date.

accept instructions and respond appropriately to criticism from supervisors. With respect to adaptation, Dr. Koontz opined that plaintiff was moderately limited in her abilities to respond appropriately to changes in the work setting and to travel in unfamiliar places or use public transportation. (R. 250.) Dr. Koontz opined that plaintiff was unemployable and would be so for 12 months or longer. (R. 257.)

Dr. Koontz completed a second form detailing her abilities to perform work-related activities. Dr. On this form, Koontz opined that Lamb was markedly limited in significantly more areas. With respect to her abilities to remember locations and work-like procedures and to understand and remember detailed instructions, she was markedly limited. She moderately limited in her ability to understand and remember very short and simple instructions. With respect to concentration and persistence, plaintiff was markedly limited in her abilities to carry out detailed instructions; to maintain attention and concentration for extended periods; to work in coordination with or proximity to others without being distracted by them; and to complete a normal workday and workweek without interruptions from psychologically based symptoms. (R. 256.) She was moderately limited in her ability to carry out very short and simple instructions; to perform activities within a schedule, maintain regular attendance, and be punctual; to sustain and ordinary routine without supervision; and to make simple work-related decisions.

With respect to social interaction, Dr. Koontz opined that plaintiff was markedly limited in her abilities to interact appropriately with the general public; to accept

9

instructions and respond appropriately to criticism from supervisors; to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. She was moderately limited in her ability to ask simple questions or request assistance and to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. With respect to adaptation, plaintiff was markedly limited in her ability to respond to changes in the work setting and to be aware of normal hazards and take precautions. She was extremely limited in her ability to travel in unfamiliar places or use public transportation. (R. 256.)

### **Administrative Law Judge's Findings.**

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2009.

2. The claimant has not engaged in substantial gainful activity since June 20, 2004, the alleged onset date (20 CFR §§ 1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the severe combination of impairments best described as depressive disorder, dysthymia and rule out post traumatic stress disorder (20 CFR §§ 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, it is found that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations. She is limited to work involving simple to moderately complex instructions and tasks in environments with "mild" stress, defined in this case as having no production quotas or time

       pressures. Also, she is limited to superficial contact with co-workers, supervisors and the general public.

6.     The claimant is able to perform past relevant work (20 CFR §§ 404.1565 and 416.965).

7.     The claimant was born on June 18, 1954 and was 50 years old, which is defined as an "individual closely approaching advanced age," on the alleged disability onset date and at all times relevant to this decision (20 CFR §§ 404.1563 and 416.963).

8.     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR §§ 404.1560(c), 404.1566, 416.960(c), and 416.966).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from June 20, 2004 through the date of this decision (20 CFR §§ 404.1520(g) and 416.920(g)).

(R. 16-22.)

**Standard of Review**.  Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'"  *Id*.  *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir.

1976). The Commissioner's findings of fact must be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366 (6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments.** Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because the administrative law judge improperly disregarded the opinion of her treating psychiatrist, Dr. Koontz. Dr. Koontz opined that her psychiatric impairment was so severe that it precluded all work activity. Plaintiff maintains that Dr. Koontz's opinion was entitled to a controlling weight. Although Dr. Koontz documented that plaintiff had improved during treatment, a later evaluation indicates that she was markedly limited in her abilities to sustain an ordinary routine without special supervision and to set realistic goals and make plans independently of others. Dr. Koontz concluded that plaintiff was moderately limited in 10 out of 18 other areas of functioning. Plaintiff also argues that the GAF score of 62 in Dr. Koontz's treatment notes should be disregarded because they are inconsistent with the rest of the treatment notes.

**Analysis.**

Treating Doctors' Opinions.  Plaintiff argues that the Administrative Law Judge erred in rejecting the opinion of Dr. Koontz that she was disabled.

Treating Doctor: Legal Standard.  A treating doctor's opinion on the issue of disability is entitled to greater weight than that of a physician who has examined plaintiff on only one occasion or who has merely conducted a paper review of the medical evidence of record.  *Hurst v. Schweiker*, 725 F.2d 53, 55 (6th Cir. 1984); *Lashley v. Secretary of Health and Human Services*, 708 F.2d 1048, 1054 (6th Cir. 1983).  The treating doctor has had the opportunity to observe his patient's impairments over the course of time.

Even though a claimant's treating physician may be expected to have a greater insight into his patient's condition than a one-time examining physician or a medical adviser, Congress specifically amended the Social Security Act in 1967 to provide that to be disabling an impairment must be "medically determinable."  42 U.S.C. §423(d)(1)(A).  Consequently, a treating doctor's opinion does not bind the Commissioner when it is not supported by detailed clinical and diagnostic test evidence.   *Warner v. Commissioner of Social Security,* 375 F.3d 387, 390 (6th Cir. 2004); *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779-780 (6th Cir. 1987); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1983); *Halsey v. Richardson*, 441 F.2d 1230, 1235-1236 (6th Cir. 1971); *Lafoon v. Califano*, 558 F.2d 253, 254-256 (5th Cir. 1975).  20 C.F.R. §§404.1513(b), (c), (d), 404.1526(b), and 404.1527.

The Commissioner's regulations provide that she will generally "give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." 20 C.F.R. § 404.1527(d)(1). When a treating source's opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. § 404.1527(d)(2). In determining the weight to assign a treating source's opinion, the Commissioner considers the length of the relationship and frequency of examination; nature and extent of the treatment relationship; how well-supported the opinion is by medical signs and laboratory findings; its consistency with the record as a whole; the treating source's specialization; the source's familiarity with the Social Security program and understanding of its evidentiary requirements; and the extent to which the source is familiar with other information in the case record relevant to decision. *Id.* Subject to these guidelines, the Commissioner is the one responsible for determining whether a claimant is disabled. 20 C.F.R. § 404.1527(e)(1).

Social Security Ruling 96-2p provides that "[c]ontrolling weight cannot be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques." Consequently, the decision-maker must have "an understanding of the clinical signs and laboratory findings and what they signify." *Id.* When the treating source's opinion "is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given

14

controlling weight . . . ." The Commissioner's regulations further provide that the longer a doctor has treated the claimant, the greater weight the Commissioner will give his or her medical opinion. When the doctor has treated the claimant long enough "to have obtained a longitudinal picture of your impairment, we will give the source's [opinion] more weight than we would give it if it were from a non-treating source." 20 C.F.R. §404.1527(d)(2)(i).

The Commissioner has issued a policy statement about how to assess treating sources' medical opinions. Social Security Ruling 96-2p. It emphasizes:

1. A case cannot be decided in reliance on a medical opinion without some reasonable support for the opinion.

2. Controlling weight may be given only in appropriate circumstances to medical opinions, *i.e.*, opinions on the issue(s) of the nature and severity of an individual's impairment(s), from treating sources.

3. Controlling weight may not be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques.

4. Even if a treating source's medical opinion is well-supported, controlling weight may not be given to the opinion unless it also is "not inconsistent" with the other substantial evidence in the case record.

5. The judgment whether a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record requires an understanding of the clinical signs and laboratory findings and what they signify.

15

6. If a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight; *i.e.*, it must be adopted.

7. A finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator.

The case law is consistent with the principals set out in Social Security Ruling 96-2p. A broad conclusory statement of a treating physician that his patient is disabled is not controlling. *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984). For the treating physician's opinion to have controlling weight it must have "sufficient data to support the diagnosis." *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 536, 538 (6th Cir. 1981); *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). The Commissioner may reject the treating doctor's opinions when "good reasons are identified for not accepting them." *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988); 20 C.F.R. § 404.1527(d)(2)("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion"); *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004). The Commissioner must make the final decision on the ultimate issue of disability. *Warner v. Commissioner of Social Security*, 375 F.3d at 390; *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 855 (6th Cir. 1986); *Harris v. Heckler*, 756 F.2d at 435; *Watkins v. Schweiker*, 667 F.2d 954, 958 n.1 (11th Cir. 1982).

Treating Doctor: Discussion. With respect to Dr. Koontz, the administrative law judge stated:

> As for the opinion evidence, the opinions of Dr. Koontz, as provided by counsel, are rejected. As pointed out in a brief by counsel, Dr. Koontz's opinions are not consistent with his treatment records founds in Exhibits 6F and 7F. Further, the regulations provide that the final responsibility for deciding issues such as, whether an individual's impairments meets or is equivalent in severity to the requirements of any impairment in the listings; what an individual's residual functional capacity is; whether an individual's residual functional capacity prevents him or her from doing past relevant work; how the vocational factors of age, education, and work experience apply; and whether an individual is "disabled" under the Act, are reserved to the Commissioner (SSR 96-5p).

(R. 20.)

The administrative law judge concluded that Lamb had the residual functional capacity to perform a full range of work at all exertional levels, but she was limited to work involving simple to moderately complex instructions and tasks in environments with mild stress, which was defined as having no production quotas or time pressures. Lamb was also restricted to jobs involving only superficial contact with co-workers, supervisors, and the general public. (R. 18-19.) This residual functional capacity is supported by the opinions of Dr. White, an examining psychologist, and Dr. Terry, a reviewing psychologist.  Dr. White found that Lamb had the abilities to remember and concentration and to follow simple directions. Her ability to get along with others was only mildly impaired, and her ability to withstand stress from a stressful environment was moderately impaired. (R. 122.)  Dr. Terry stated:

17

> The clmt's ability to get along with others may be affected by the symptoms of PTSD and depression but she can interact appropriately with others on a superficial level. Given her depression, irritability and short temper, she'd perform optimally in a work environment that requires her to have only minimal contact with the public/coworkers/supervisors. Her ability to withstand stress is moderately impaired due to the PTSD and depression but she can follow simple to moderately complex directions and complete simple to moderately complex tasks.

(R. 140.)

Plaintiff argues that the administrative law judge should have adopted the opinion of Dr. Koontz that she was disabled in spite of the fact that her assigned her a GAF score of 62, indicating mild symptoms. According to plaintiff, Dr. Koontz's treatment records evidence serious symptoms of a disabling impairment. Dr. Koontz opined that plaintiff was unemployable. (R. 257.)

While arguing that the administrative law judge erred in failing to adopt the opinion of Dr. Koontz, plaintiff highlights a basis for which it is acceptable to disregard the opinion of a treating doctor. Here, Dr. Koontz's opinion is internally inconsistent. Despite finding significant limitations in her ability to perform work-related tasks, Dr. Koontz assigned a GAF score of 62. Furthermore, Dr. Koontz's treatment notes frequently reflect that plaintiff was doing well and was stable. During those times when Lamb experienced an exacerbation of symptoms, events in her life provide an understandable basis for why she was not doing well. For example, Lamb's symptoms of depression increased when she was kicked out of her brother's house and when her father told her that he never loved her. Furthermore, the opinion of Dr. Koontz is

18

inconsistent with other substantial evidence in the record, that is, the opinions of Drs. White and Terry. As a result, I cannot say that the administrative law judge erred in rejecting the opinion of Dr. Koontz.

From a review of the record as a whole, I conclude that there is substantial evidence supporting the administrative law judge's decision denying benefits. Accordingly, it is **RECOMMENDED** that the decision of the Commissioner of Social Security be **AFFIRMED.** It is **FURTHER RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED** and that defendant's motion for summary judgment be **GRANTED.**

If any party objects to this Report and Recommendation, that party may, within ten (10) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

                                               s/Mark R. Abel  
                                               United States Magistrate Judge